205585 215545 Anissa Colson v. City of Alcoa TN at all. Arguments not to exceed 15 minutes per side. Mr. Bibb for appellants. Good afternoon. May it please the court. This is Brian Bibb of the Knoxville, Tennessee Bar on behalf of the appellant's officers Dustin Cook and Eric Wilson of the City of Alcoa Police Department. This is a qualified immunity appeal actually from two orders of the United States District Court for the Eastern District of Tennessee. A little different procedurally in terms of how this developed. The district judge. The lights are not on for the argument. We're using the number over here. I'm sorry. I was just looking at the light here on the podium. I didn't see it on. I apologize. We'll give you a little bit of extra time. Go ahead. The first order the court asked essentially for additional briefing a renewed summary judge motion on the issue we're here for today. Which is whether officers Cook and Wilson were deliberately indifferent to Ms. Colson's serious medical need. A different district judge considered the renewed motion and denied it on qualified immunity grounds as well. Which is how we're up here. The two appeals have been consolidated and the only issue remaining to be decided is the deliberate indifference claim. Lieutenant Keith Fletcher was a party to the first appeal. Lieutenant Fletcher was dismissed by the district court in its second opinion. So Lieutenant Fletcher is not a party at this time. Ms. Colson was arrested for DUI on June 23, 2015. Counsel, there's a formal rule but there's a typical understanding in the law that like cases should be treated alike. So our court has recently affirmed the denial of qualified immunity to another officer who was involved in this same scenario. How is your case different or how can we distinguish your case? The first case involved Deputy Mandy England who worked for the Blount County Sheriff's Office. Deputy England is a jailer. Deputy procedurally or factually how this occurred is the city officers brought her to the jail after making the arrest and there was an altercation at the hospital. Two major differences. Number one are the factual differences. Jailer England continued in custody of the plaintiff and had a continuing obligation and continuing interaction with her to observe her medical condition and follow up as necessary. Second and more importantly is I think the biggest difference is the custody issue. And that was really what the district court below struggled with. In fact in its first opinion the district court asked for additional briefing after admitting that it could find no cases on point. And then admitting that whether or not she there was a duty to provide medical care to an individual in sort of this nebulous zone between transfer of custody was a novel question of law. And so what occurred is the officers take Ms. Colson to the jail. They pull into the sally port. She gets out of the vehicle and is immediately transferred to the custody of Blount County who then begins the booking process. The officers are present because they are going to go upstairs and apply for a search warrant to obtain a search warrant to get a blood draw. That's why they're still there. But Blount County takes over the responsibility of processing her, booking her and it's a Blount County nurse. She's not a direct employee of Blount County but she's employed through a contractor. So it's a separate entity in terms of it's not a Blount County Sheriff's or a Blount County nurse who are both employees of the jail. It's city police officers who are just trying to do their job and hand off the arrestee to the jail who under Tennessee law has the obligation to provide medical care and see to the medical needs of the prisoner. Another point, I think the decision in the England case or Colson 1, however I think of it in the Mandy England case, was issued before the Supreme Court's, in my mind, clarification of the standards for qualified immunity in Rivas Villegas and City of Tahlequah. Which both I think quite emphatically emphasized that the district court has an obligation in denying qualified immunity to identify a sufficiently similar case and that if any of the identified cases are materially distinguishable that the officer is entitled to qualified immunity. The first panel of this court issued it's decision before those clarifications from the Supreme Court in City of Tahlequah and Rivas Villegas. And I think, I'm not going to speak for the panel, but those may have weighed into the decision making process in terms of whether the court's definition of the clearly established right in Colson 1 should. So your friend, I think in Colson 1 maybe it was identified as a right to medical care if there's an obvious medical need? Writ large. And I think respectfully to the, let me say this, I think the panel can rule for Cook and Wilson without disturbing or conflicting with Colson 1. I think there are significant enough factual and procedural distinctions that the court need not necessarily issue an opinion in this case that somehow undermines the illegitimate. You just recited all the differences in your mind, right? Yes. So you're going to move on to the, so then. Yeah, and so, and I think respectfully to the prior panel, the definition of the right I think is too high of a level of generality. I don't think it suffices to say the right is clearly established to receive medical care. And I think this court's prior precedent, particularly Arrington Bay v. City of Bedford Heights, specifically says that that level of generality, that definition of the clearly established right is insufficient under the Supreme Court's particularized guidelines that it's put down in recent years. I think what they would need to appoint to, and they've had many opportunities to, the district court couldn't do it, the plaintiff couldn't do it, the plaintiff hasn't been able to do it on appeal, is find a case that is at least arguably factually similar, that would put an officer in officers Cook and Wilson's position on notice that they had an obligation to ensure adequate medical care for a person for whom they had transferred custody. And in my mind, one of the challenges with that is what were the officers supposed to do? The jail nurse does not work for their entity. They have no control over the jail Were they supposed to take back custody from the jail and drive her back over to the hospital? The medical proof, the undisputed medical proof that was adduced below says that there's nothing that could have been done for her injury, which was a torn ACL, which is certainly not an injury someone wants to have, but it's not an emergent condition that even can be immediately treated. They were at the hospital previously though. That's true. So they came to the hospital for the blood draw. She exits the vehicle, she refuses to, she originally consented to the blood draw. That's why they go to the hospital. When she exits the vehicle, she now says, no, I'm not going to consent to a blood draw. So the officers say, all right, get back in the car. Was her knee problem, I mean the supposed pop had already happened, she'd complained to them in the car about a sore knee. Couldn't they have just taken her into the hospital at that point? I mean, they're right there. I think the point at which giving the plaintiff's facts, the light most favorable to the plaintiff, the argument is the knee injury occurred during the getting her back into the vehicle. At that point, Ms. Colson is already significantly inebriated, but this is now combative. Certainly they had gone to the hospital with a non-combative, drunk but cooperative prisoner under the hopes that she would consent to go into the hospital for a blood draw. Now she's fought with the officers and they've had to force her back in the vehicle, and I think that changes their decisional calculus a little bit. How far away was the facility that they were taking her from? Sixty-nine seconds. If you're in, it's literally across the street, so if you're standing in the drive-through for the emergency room, you look to your left, the jail is visible, and it's directly across a four-lane highway. Your position is that Officers Cook and Wilson lost custody as soon as she got to the jail? I think, you can see the moment on the body cam, when they get out and the jail individuals immediately take over responsibility for instructing Ms. Colson on where to go. You're saying they no longer have custody when she's being analyzed by the nurse? That's the position that we're taking. And even more importantly, even if we're wrong on that, there's no case sufficiently on point that would have given these officers notice that they had an ongoing obligation to provide medical care at that point. The custody issue, that was the issue that Judge Ashley ruled on, on the subsequent motion or motion of consideration? It is. Yes. Yes. Judge Jordan, in the first opinion, said, hey, I can't find any law on point on this. Why don't you guys try and see if you can get some law on point for me? We weren't able to find any. The plaintiff wasn't able to find any. Judge Ashley found a district court opinion from the Southern District of Ohio, which we've distinguished in our brief, but even beyond that, a district court opinion is insufficient to clearly establish a right. So even if that case is perfect and directly on point, it doesn't serve to provide Officers Cook and Wilson notice that their conduct would violate a clearly established right. So your point on the custody is one of your arguments is they had transferred custody to the county, in which case, any constitutional obligation they had ended, ceased. They may have had a constitutional obligation to force conducts to intervene if there was excessive force used, but in terms of providing medical care, and in fact, this court has held in... So suppose you lose on that argument, or suppose it's a complicated question, then you come back to, there was no constitutional violation, and if there was, there was no clearly established law requiring them to do something. I still take the position, Your Honor, that the officers... That there was no law clearly established as of June 23rd, 2015, that told these officers that they had an obligation to override the expressed medical opinion of a trained medical professional and essentially act as nurse or doctor and say, sorry nurse, you got this wrong. Either try it again, or can you call somebody else in to do this? And I'll note that there's about eight people in that booking room, Blount County and city officers, and nobody says anything, because I think officers are entitled to rely on the medical professionals that work with them. And I'll say this court, and a decision we've cited in our brief, Robertson v. Wynkoop, has held in material of similar circumstances that an officer of a city that then transfers custody to a county is entitled to rely on the county to protect the constitutional rights of the detainee. In other words, the city officer has the right to presume that the county will discharge its constitutional obligations. Let me briefly address the issue that the court wanted supplemental briefing on, which is whether the Fourth and Fourteenth Amendment applies. We've submitted a briefing on that. We take the position that the Fourteenth Amendment applies. As Judge McKeague put in his dissent in the Esch v. County of Kent case, where the court has identified the governing standard, it has uniformly applied the Fourteenth Amendment deliberate indifference standard. There's no case law or authority from this circuit indicating that the Fourth Amendment should apply in this context, simply because the individual had not yet been submitted to a magistrate for probable cause determination. In my mind, it doesn't make a whole lot of sense to apply a less stringent or more stringent from the perspective of the defendant standard on arresting officers who often have only rudimentary medical training, and then apply a more forgiving standard to the residential jail facility employees, and more importantly, the medical staff at jail facilities. We've briefed that point. Aldini is the case that your friend on the other side thinks gets a springboard to say that in this case, the Fourth Amendment applied there to excessive force. It should apply here to a deliberate indifference claim. You can see that Aldini's right. Is there any thought that Aldini might be wrong based upon an intervening Supreme Court precedent? I mean, I'm not sure that I feel like I'm in a position to comment on whether that case is wrong or not. I'll say this. I don't feel like a decision that, let's assume the case is right for the purpose of discussing it. I just didn't know if there were any intervening cases that you thought. I'm not aware of any. But I'll confess I've not specifically researched that issue. But I'll see my time's up. Thank you. Thank you. And you've reserved some rebuttal time. Okay. Good afternoon, Your Honor. May it please the Court, my name is Lance Baker and I'm here today representing Ms. Colson as the plaintiff in this appeal. I want to make one thing clear right off the bat. Make no mistake about it. Genuine issues of material fact preclude the granting of summary judgment today like they have in the past to Officer Cook and Officer Wilson. Why can't we just accept the facts as you've, why can't we accept the facts that you've, the best case scenario for your client? Why can't we just accept those facts and then rule on the law? I think the Court can and I think that's exactly, Your Honor, what the panel in the England case did, just like the two district judges below said, the defense is not accepting the plaintiff's facts. Well, who cares? I mean, what if we accept it? We write an opinion and we accept everything you've said. That's okay, right? That's perfectly fine. That's perfectly fine. I'm just pointing out that the defendants continue even in the England appeal to not do that. There's always two sides to the story. Always two sides to the story. Completely agree. And you're not saying that our prior decision is binding here. It's an unpublished decision, right? That decision doesn't control our decision here. It doesn't control but what I would say that is the same and I would disagree with my colleague in that in that particular case in the England appeal you had a corrections officer that didn't even have enough information as what his clients had, Officer Cook and Wilson. They were actually on the scene. They observed. They perceived the knee pop, the sufficiently serious knee injury. It was their duty at that point to relay enough information to even Officer England. So I guess what I'm saying is if this same panel and this same circuit found that Officer England who was in a worse off position to know of the injury than the defendant's clients were, then I believe that this panel has a duty to rule in the same or similar fashion that that panel did. Ultimately, you get down to four words in this case when talking about Nurse Russell when my client gets to the Sally Port. Don't see no swelling. Don't see no swelling. That was no medical opinion at all. And that's what the two district judges found. That's what the panel found in the England appeal. There was also an examination that took place before that. What's the best case that says that laymen are supposed to override or ignore the medical opinion of a medical professional? I think when it's so obvious, when it's so obvious that even a layperson would know, like the district court found, they used the word that this is dubious at best. This is dubious at best. This is akin to no medical treatment whatsoever. Was there a case, though, where qualified immunity was denied, where a medical professional had, I mean, I guess we have the previous situation. The medical professional was denied qualified immunity before in this case, but is there any other case where an officer was denied qualified immunity where a medical professional had said the medical need did not require hospitalization? Your Honor, I think to what you're getting at, I don't know if you're referring to the McGaugh v. Sevier County case. I'm just asking you, what's your best case with that kind of scenario? I don't think that there is a case in this circuit that mandates, even if there is a sufficient serious medical need, that mandates specifically that someone in my client's position be taken to the hospital. You have a case outside of the circuit that holds that? Judge, not off the top of my head. Again, what I'm saying is I don't think that there is a case in this circuit that mandates hospitalization even for a sufficiently serious and obvious medical need. But in this particular case, I think when they're ultimately at the hospital already, you can see it in the background of the video, medical professionals, especially ERs, are I do a lot of criminal cases and most of my clients that are taken for DUI draws are not even taken to the regular ER check-in. They're taken to a more narrowly scoped area of the jail, get this done, and then you go back. So I think certainly that Officer Cook and Wilson, on June 23, 2015, it was clearly established that when they perceived that there was a sufficiently serious and obvious injury to a layperson, that they had a duty at that point under the Constitution to provide Ms. Colson with adequate medical treatment. Taking her to the jail that was 69 seconds away where there's a nurse employed? Yes, so I think, Your Honor, at that point when they... I'm waiting in the emergency room. I've taken longer than the 69 seconds it took to get to the other facility. Could be, Your Honor. I think, though, what we're getting at is 20-20 hindsight. I noticed in the defendant's brief that they talk about how they weren't aware that, you know, what the medical treatment at the jail was going to be like. Well, just like in many cases that I do as a plaintiff's attorney, we can't look at things 20-20 hindsight. Right? We always hear as plaintiffs this rapidly evolving situation that we can't second guess officers. The defendants in this case for Officer Cook and Wilson always refer to two years down the road when Ms. Colson finally got this knee surgery. Mr. Bibb, one thing that I'd like you to address, if you would, please, and this doesn't require hindsight. We've all looked at the tapes. So there's no question that they heard the knee pop. That's not a dispute. But once she gets to the jail, they take her out of the car, and from what I can see watching the tape many times, she walks with no difficulty whatsoever from the car to whatever the door is that they go into to get into the booking area. When she goes into the booking area, they appear to have put her up against a wall that had some sort of black surface. I'm guessing probably that was to take pictures or something like that. But in any event, on one occasion, she seemed to have required assistance. But the entire rest of the time, she seems to be standing there largely without any trouble. So based on just what we've looked at, and admittedly, she says her knee hurts, but the cases are very clear that nobody is bound by what a person claims to be the pain that they're suffering. So why was that so obvious that they couldn't rely upon the nurse and they had to take her to the hospital? I'm having trouble understanding that. So, Your Honor, I think my first point I would like to just make clear, when they're at the jail, we weren't necessarily saying, or at the hospital, that there is a case that mandates that they would have taken her to the hospital. And I would respectfully disagree. Yeah, I think in the Sally Port area, when they do finally get her in there, her knee does buckle. I mean, she completely falters to the ground. The officers, I think... She's also quite drunk, right? Double the legal limit for alcohol. I don't dispute her level of intoxication, Your Honor, but I don't think that there's any case that the defendants or any court can cite that someone who is intoxicated... You have the obligation to show that this is clearly established? A constitutional violation is clearly established? And I think that we've done that. I think that we've done that, especially when... The reason I'm asking you the question is there are other cases that are favorable to you, but that's ones where somebody is so incapacitated they've had to drag them into the jail or drag them someplace else. Here, yes, her knee arguably buckled one time in the booking area, but she walks without any difficulty over into the booking area. So why is it so... You simply haven't addressed why, other than her saying her knee popped, why is that so obvious that they should have taken her to the hospital? It is so obvious, Judge, because in addition to not only her saying that her knee popped, it is readily apparent on video that her knee pops. And that's true because Officer Wilson, who was the officer that was closest to her, and quite frankly caused the knee popping, right after this incident happens, walks over and whispers and tells into Officer Cook's ear, I just heard her knee pop. And then they... With all due respect, you're missing the import of the question. There's no question that her knee popped. There's no question that the police heard her knee pop. But after it popped, for whatever impact, import that has, she walks into the jail. So why, just because it popped, I mean, I can pop my shoulder sitting right here, and I don't think you're going to be volunteering to take me to the hospital. So why is it so obvious that they couldn't leave her in the care of the nurse, they had to take her out of the jail and take her to the hospital, simply because the knee popped? Because I think at that point, under the case law, they saw how just dubious, and there was no medical opinion at all. I mean, I think all of us can agree. What case law? We can't find a single case that, under even arguably analogous situations, that somebody should have known her condition was serious enough that they should have disregarded what the nurse said, jerked her out of there, and taken her to the hospital. So help me out. Other than making the generalized Hope B. Pauzer argument that people make when they don't have a case, what is the case we should look at? Well, I don't think, Judge, ultimately, I don't think we have to have a case specifically on point. The Supreme Court has just said a reasonable and fair warning that Officer Cook and Officer Wilson had notice on June 23rd of 2015 that it was clearly established at that point in time that if there was a sufficiently serious injury, that adequate medical care was required. Again, I'm asking, I'll just try one more time and then I'll give up. Why does the fact that she says her knee popped and the police heard her knee make a noise, why does that dictate that that has to be taken to the hospital as opposed to being addressed in the jail? One, Your Honor, we're not mandating that she be taken to the hospital. It was okay at that point if they wanted to leave the hospital and go to the jail. But once they get to the jail and these officers stick around, they don't relinquish custody. If they had just dropped Ms. Coulson off and left, I think we would be in a different place right now. But Officer Cook, as you see, he cares more about getting things on video than caring for Ms. Coulson's medical status and watching this slipshod job. If you're saying that your argument is not that they had to take her to the hospital, then what are you saying that they were obligated to do, that they didn't do, when confronted with what you claim is one, an obvious medical condition, and two, an inadequate examination by the nurse? What is the constitutional violation at the end of those two things that you say occurred? I think we drop a footnote in our supplemental briefing, or it may be in our primary response brief, that talks about, especially if somebody's knee is hurting, that is sufficient, or leg is hurting, or not being able to walk, that is sufficient under this circuit for a serious medical need. And I understand what you're saying when she gets out of the car and you see her walk just fine, but when she gets into the salary port, she's... We don't have so much time. It's a simple question. What are you saying they should have done? If you're not saying that they had a duty to take her to the hospital, which is what we just admitted, what are you saying that this officer, just this one officer, not the ones in the jail, what was this officer constitutionally obligated to do that he didn't do? I think at that point, at the salary port, once he views the so-called medical opinion, which was no opinion at all, as what the district court found, and it's what a panel in this circuit in this same case has found, I think at that point, he had a duty to either take Ms. Colson back to the hospital, or ask at least for some sort of x-ray at the jail to be done. That's what he had a constitutional obligation to do. Now, so he had a duty to ask for an x-ray. I've never seen a case that comes even remotely close to imposing a duty upon a police officer, not even a corrections officer, to require a specific medical treatment, i.e. an x-ray. So where do we get, what puts him on notice he should have asked for an x-ray? Maybe not specifically an x-ray, but he, again, I hate to belabor the point, Your Honor, but even in the district court level, they were extremely harsh on the fact that this was no opinion, medical opinion at all. I mean, I don't think that any of us... So your argument is that the officers had a duty to second-guess the medical opinion of the nurse to get another opinion. Is that what you're, that's what you're saying? I think that there was no opinion at all. And it didn't have to be at the hospital. What she looked at, this knee, for 60 seconds, and then booked it right out of the room. They didn't have to take her to the hospital. Let's assume there was no, let's assume there was no examination. What should he have done? The failure of which to do it is a constitutional violation. Well, I think at that point, it's, at that point she has a sufficiently serious medical need that is obvious to a layperson that required on June 23rd, 2015, it was clearly established that she was owed adequate medical care. And she didn't get it. We can say all day that we didn't know that she had a broken fibula or a torn ACL. What medical care should this police officer have provided? That's all I'm trying to find out. If they couldn't, if Officer Cook and Officer Wilson were at this alley port and they see, which they did, they perceive this so-called medical examination of Nurse Russell, which again, it's our position and the district court and this panel already's position in the circuit, there was no opinion at all. I think at that point, they did have a duty to either take her back to the hospital or ask for somebody else to come check her out. I don't think any of us can arguably think that 60 seconds... Given the enormous difficulty that you and I have had getting to this point as to what it is you say that they should have done, I think it's just ironic that you, as an experienced, skilled advocate, plaintiff's advocate, if you can't really readily articulate what the police were supposed to do, then how on earth were they on notice as to what they were supposed to do? I would respectfully disagree in the fact that I've been unable to articulate a judge. I think if they were at the hospital, they could have taken her in the hospital. They decided not to. Okay, fine. There's no case that says they were mandated at that point to take her to the hospital. But once they left that, and they came to the Sally Port, they came to the jail, they stuck around for over an hour. She wasn't ever even booked. They watched this slipshod job that this nurse does. They still had a constitutional duty after seeing this lackluster examination to say, that's really not good enough at all to a medical opinion. We need to take her back and get her examined by somebody else. This idea of laymen second-guessing medical professionals, it's a pretty slippery slope. Imagine the nurse had said, oh, she's got a busted up knee, let's let her sit here for an hour and put ice on it. The nurse laughed, and the officers thought, you know what, that was a really short examination. I think the nurse got it wrong. She's fine. Let's take her across the street somewhere. They take her, and she hurts her knee even more. So there's been a short shrift, nurse examination, and the officers say, ah, the nurse got it wrong, let's take her. And she actually was hurt, and they aggravated it. You'd surely be here claiming some kind of constitutional authority against the officers for second-guessing the nurse in that sense, right? I think, again, Judge, we're looking at hindsight 2020. I mean, that didn't necessarily happen. I think we have to look at it through the lens of the facts of this particular case. I was looking through the lens of this seems like a really bad policy. We're not setting policy, but the idea that we're incentivizing laymen under the Constitution to second-guess medical officials, I just think there's a lot of ways in which that doctrine could be applied that don't necessarily make a lot of sense to me or seem like they're in the best interests of your clients. I think in this particular case, it's time to establish something that, when there is a 60-second examination, that is a lot different than somebody sticking around for 20 minutes, 30 minutes, putting ice on her knee, doing this, maybe bringing the x-ray in. None of that happened in this case. None of it happened. And it doesn't matter whether we look at it. I mean, the district court found that we had put forth more than enough evidence to beat summary judgment, and that was under the deliberate indifference standard under the 14th Amendment as opposed to the 4th Amendment objective reasonableness. So I'm just stating my times up. Are you saying, counsel, that the jail had an x-ray, that it would have been easy to just take her in there and do an x-ray? For my recollection... Is it in the record that they even had an x-ray machine, given that they're right across the street from the hospital? Yes, Your Honor, I believe it is, and they had a portable. The Southern Health Partners that was, I believe, the company that contracted with the jail nurse did have the applicability and ability to bring in a mobile x-ray machine. They decided not to do that on this particular day for whatever reason. They didn't do it. Okay. You answered the question. Thank you. That's helpful. Thank you, Judge. Okay. Well, thank you, Mr. Baker. Mr. Bidd? Thank you, Your Honors. I want to respond to just a couple of things. First of all, it sure sounds to me that we've established that there was no constitutional obligation to take Ms. Colson into the hospital as opposed to over to the jail for medical evaluation. I'm not sure that's a point that the plaintiff is maintaining at this point. And to Judge McKee's question, in this court's decision in Arrington Bay v. City of Bedford Heights, this court specifically held that they had found no clearly established law here or anywhere else from what we've seen requiring the arresting officers to drive the plaintiff to a hospital rather than the jail under these circumstances, and that was a mental health case. It's a little different, but certainly not a clearly established point. Second, I note that counsel for the plaintiff asked this court, they said it's time to establish that a 60-second examination by the jail nurse is not sufficient. And while I'll quibble with him as to the sufficiency of the exam, what I think ought to be pretty clear at this point is that if it's time to establish it, it's not clearly established. And so certainly the court under Pearson v. Callahan has the right to fully vet and address the constitutional violation prong. But I would submit and the defendant's appellants would submit that it's abundantly clear at this point that after many attempts that there is no clearly established law that's sufficient to meet the second prong, particularly under the heightened standard that the Supreme Court has articulated in its decisions in recent years. In its decisions, and I think it was October, the Supreme Court has told us that you have to have a sufficiently similar case from a factual perspective. And that if any case cited by the plaintiff is materially distinguishable, then the officers are entitled to qualified immunity. Plaintiff has not met his burden in this case. Are there any facts that your friend on the other side said that you're still resisting some of their factual allegations? Let me make it as plain as I can. Some facts that you're holding on to? No, let me make it as plain as I can. We concede to the plaintiff the best version of his facts. I tried my best to do that in the brief. If my advocacy got the better of me, I apologize, though I don't think it did. In our reply brief, I think we made it as clear as we can. We're accepting the plaintiff's best version of the facts for the purposes of this appeal. There's many points that we disagree about if we went to trial. But that's not the posture we're in in qualified immunity appeal. We have to accept the plaintiff's version of the facts. But easily, under the plaintiff's best version of the facts, the court can conclude that the officers are entitled to qualified immunity. And I'll also note that this court has said that defendants on a qualified immunity appeal may point to other of the plaintiff's record evidence or some other incontrovertible record evidence to support its argument for reversal on legal ground. That's Downward v. Mark, 968 F. 3rd 594. So we feel that we've complied with the strictures of qualified immunity appeal and that it's plain from the proof that we've heard, the argument that we've heard, that officers Cook and Wilson are entitled to qualified immunity and that both decisions of the district court should be reversed. Thank you, Mr. Bibb. Thank you, Your Honors. Thank you, both counsel. We'll take the case under submission and issue an opinion in due course.